DECISION
This is an appeal by defendant, Kangol K. Dobosu, from a judgment of sentence and conviction entered by the Franklin County Court of Common Pleas following a jury trial in which defendant was found guilty of aggravated robbery, robbery, kidnapping and theft.
On August 23, 1999, defendant and two co-defendants, Michael Mitchell and Naquan Saunders, were each indicted on one count of aggravated robbery, in violation of R.C. 2911.01, one count of robbery, in violation of R.C. 2911.02, one count of kidnapping, in violation of R.C. 2905.01, and one count of theft, in violation of R.C. 2913.02. The counts involving aggravated robbery, kidnapping and theft also carried a firearm specification.
The matter came for trial before a jury beginning on November 16, 1999. The first witness for the state was Steven Newton, the alleged victim. Newton gave the following testimony regarding the events at issue.
On August 14, 1999, at approximately 1:30 a.m., Newton drove his sister's Chevy Lumina to his cousin's house. At 2:30 a.m., Newton left his cousin's residence to drive to a nearby restaurant; on the way to the restaurant, he saw a friend, Carmen, near Franklin Avenue. Carmen was with her mother and a man who Newton identified at trial as the defendant. Carmen told Newton that the defendant was her cousin.
Newton informed Carmen that he was going to get something to eat, and Carmen indicated that she wanted to go with him. During this conversation, Carmen's mother and the defendant walked down the street. Carmen got inside Newton's car to go with him to the restaurant, but shortly thereafter they drove to an apartment complex on Douglas Street because Carmen wanted to get her coat from her mother.
Carmen told Newton to wait for her while she went upstairs to the apartment. Carmen went upstairs and then returned after a few minutes with the defendant. The defendant whispered something to Carmen. Carmen then asked Newton if he could give her cousin a ride to his residence; Newton agreed to let him in the car.
The defendant got in the back seat while Carmen sat in the front passenger seat. The defendant eventually drove to the intersection of Linwood and Oak, near an apartment building. Carmen indicated that she "would be right back down, to wait on her." (Tr. 49.) Carmen and the defendant exited the vehicle and walked up to one of the apartments.
Newton waited in the car and, after approximately five minutes, an individual who Newton had never seen before knocked on the car window. At trial, Newton identified co-defendant Mitchell as the person who knocked on the car window that evening. Mitchell stated to Newton, "Carmen asked if she could have $30." (Tr. 51.) Newton told the man that "if she wanted $30, she can very well come down and get it herself." (Tr. 52.) Mitchell "paused just a moment and turned away from the window." (Tr. 52.)
Newton was adjusting the knob on the car radio when "the passenger door and rear passenger door swung open, as the one gentleman [Mitchell] I had just been talking to had entered that quick." (Tr. 52.) Also entering the car at that time was the defendant, who positioned himself in the rear passenger seat directly behind Newton. The defendant "pulled a nickel-plated handgun" and pointed it at Newton. (Tr. 54.) At trial, defendant identified the state's Exhibit No. 2 as the weapon that defendant pointed at him on the date of the incident.
Mitchell began hitting Newton in the jaw, and Newton was told to give the men his money or he would be killed. Newton reached down to retrieve his wallet from his sock, and he gave the wallet to Mitchell. Newton testified that a tennis bracelet he had previously bought for $500 was in his wallet. According to Newton, a jeweler had told him that the bracelet could be worth as much as $5,000 while another jeweler had appraised the bracelet's value between $500 and $1,500.
Newton noticed that there was a third individual outside the car during this time, and at trial he identified this man as co-defendant Saunders. Newton managed to get the car door open and he fell out of the car, but the defendant kept the gun on him. The defendant said to Newton, "freeze or I will shoot you right now." (Tr. 57.) Mitchell then told Newton to take off his clothes, but Newton refused. As Newton was attempting to back away from the car, Saunders said to the defendant, "we don't have to go that route. We already have the money and the car. We ain't got to go any further." (Tr. 66.)
At that time, it became apparent to Newton that "they were going to allow me to back off." (Tr. 67.) As Newton continued to back away, he observed the men unlock the trunk of the car and begin searching through the trunk, throwing items on the sidewalk and street.
The men then got inside Newton's car and drove away. Newton ran from the scene; he eventually found a pay phone and dialed 911, reporting the incident to the operator. A short time later, Newton spoke with police officers about the incident. While he was still talking to the police, an officer indicated that the car had been recovered. Police officers drove Newton to Bryden Road, where the vehicle was located. Police had also detained the occupants; Newton saw the three men he had observed earlier, as well as Carmen, being taken into custody by the police. Newton later found his wallet, along with the bracelet, under the front passenger seat of his vehicle. Newton testified that thirty dollars was missing from the wallet and that the bracelet was broken.
Columbus Police Officer Christopher Hogan testified that he was working the third-shift patrol on August 14, 1999. Officer Hogan received a dispatch regarding an armed "carjacking/robbery" at approximately 3:30 a.m. (Tr. 244.) Officer Hogan received a description of a vehicle and he subsequently observed a vehicle matching the description. Officer Hogan followed the vehicle and the driver of the vehicle pulled over. There were four individuals in the vehicle. At trial, Officer Hogan identified the defendant as one of the individuals in the vehicle on the date in question. The defendant was seated in the rear passenger seat on the driver's side. Officer Hogan testified that a semi-automatic pistol and four rounds of ammunition were recovered from inside the vehicle.
At trial, the defendant did not call any witnesses on his own behalf. Following deliberations, the jury returned verdicts finding defendant guilty of the charges of aggravated robbery, robbery, kidnapping and theft, as well as the firearm specifications. The trial court sentenced defendant by judgment entry filed December 1, 1999. The trial court filed an amended judgment entry on December 10, 1999.
On appeal, defendant sets forth the following single assignment of error for review:
 THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION.
Under his single assignment of error, defendant contends that there was insufficient evidence to sustain his convictions. Although defendant labels his assignment of error as a sufficiency argument, defendant's brief also raises essentially a manifest weight claim, and therefore we will discuss both concepts.
In State v. Curry (May 25, 2000), Franklin App. No. 862, unreported, this court noted:
 The Ohio Supreme Court has recognized that the legal concepts of sufficiency of the evidence and weight of the evidence are different. State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. In determining whether there is sufficient evidence to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The test for reviewing the weight of the evidence, however, is slightly different, "and the evidence is not construed most strongly in favor of the state." State v. Booth (May 6, 1999), Franklin App. No. 98AP-944, unreported, quoting State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported. Rather, "the appellate court must engage in a limited weighing of the evidence to determine whether there is sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt." Booth, supra.
As noted under the facts, defendant was convicted of aggravated robbery, robbery, theft and kidnapping. R.C. 2911.01, Ohio's aggravated robbery statute, provides in part that "[n]o person, in attempting or committing a theft offense * * * shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it." R.C. 2911.02 defines robbery, and provides in pertinent part that "[n]o person, in attempting or committing a theft offense * * * shall * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another." Theft is defined under R.C. 2913.02(A)(1) as knowingly obtaining or exerting control over the property of another "[w]ithout the consent of the owner or person authorized to give consent." R.C. 2905.01
defines kidnapping, and provides in part that "[n]o person, by force, threat, or deception * * * shall * * * restrain the liberty of the other person * * * [t]o facilitate the commission of any felony." Further, the comments to R.C. 2905.01 state that "the restraint involved need not be actual confinement, but may be merely compelling the victim to stay where he is."
In the present case, the victim, Newton, testified that the defendant and co-defendant Mitchell forced themselves into his car. As the assailants demanded Newton's money, the defendant pointed a gun at Newton and Mitchell struck Newton in the jaw. Newton gave the men the money from his wallet. When Newton managed to get out of the car, the defendant, while continuing to point the weapon at Newton, told him to "freeze or I will shoot you right now." (Tr. 57.) The assailants subsequently searched the trunk of Newton's vehicle and then left the scene in his car. A short time later, when a police officer approached the vehicle, the defendant was seated in the back seat. A loaded weapon was also recovered from inside the vehicle. Here, viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence presented to enable rational jurors to find all the essential elements of aggravated robbery, robbery, theft and kidnapping beyond a reasonable doubt.
Defendant's basic contention appears to be that the alleged victim, Newton, was not a credible witness. Defendant points out that Newton had a prior criminal record, and defendant contends that there were inconsistencies in his testimony. However, the credibility of witnesses and the weight to be accorded their testimony is primarily within the province of the jury. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. In the present case, the trier of fact heard the victim acknowledge during his testimony that he had two prior criminal convictions, and the fact of such convictions, while going to the weight of his testimony, did not render his testimony unreliable as a matter of law. See, e.g., State v. Ballard (Sept. 30, 1997), Lucas App. No. L-95-394, unreported (victim admitted he had previously been convicted of felony and jury was in best position to judge credibility of victim's testimony).
Moreover, although there may have been some inconsistencies during the course of Newton's testimony, in which he was cross-examined by three separate defense counsel representing the various defendants, any inconsistencies were minor. As to the essential elements of the crime, the victim's testimony was not inherently incredible and the jury was entitled to credit the witness's account. As previously noted, in addition to the facts as related by Newton, Officer Hogan testified that defendant was one of the occupants in the vehicle at the time it was recovered, corroborating the victim's testimony regarding defendant's involvement. Further, contrary to defendant's contention that there was no evidence indicating where the weapon was recovered, Officer Hogan testified that he remembered observing one of the officers pull the handgun "out of the car," and that the officer "was at one of the driver's side doors" at the time. (Tr. 266.)
Upon review of the record, we cannot say that the jury lost its way and created a manifest miscarriage of justice in finding defendant guilty of the offenses. Accordingly, we conclude that there was sufficient evidence to support defendant's convictions and that the convictions were not against the manifest weight of the evidence.
Based upon the foregoing, defendant's single assignment of error is overruled and the judgment of the trial court is hereby affirmed.
TYACK and LAZARUS, JJ., concur.